IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

IN RE:                                )
                                      )
CAROL LEE HELMING,                    )          Case No. 16-20244
                                      )
                Debtor.               )
                                      )

**MEMORANDUM OPINION**

Before the Court is an objection by John Reed, Trustee ("Trustee") to the claim by

Debtor Carol Lee Helming ("Debtor") of exemption in an annuity pursuant to Mo. Rev. Stat. §

513.430.1 (10)(e).  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§

1334(b), 157(a) and 157(b)(1).  This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(B)

and (A) which this Court may hear and determine and in which it may issue a final order.  The

following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52

of the Federal Rules of Civil Procedure made applicable to these proceedings by Rules 7052 and

9014(c) of the Federal Rules of Bankruptcy Procedure.  For the reasons set forth below, I find

that the monthly annuity payments due Debtor under the policy do not qualify for exemption

under Mo. Rev. Stat. § 513.430.1(10)(e).

### I.    Factual and Procedural Background

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on March 24, 2016.  The

schedules list as an asset a $100,000 single premium annuity purchased from Kansas City Life

Insurance Company on May 10, 2013.  Debtor valued the annuity at $436, the amount of the

monthly payment she is receiving from the annuity.  She asserts the annuity as exempt pursuant

to Mo. Rev. Stat. § 513.430.1(10)(e).  The Trustee has objected claiming that it does not qualify for exemption under the statute for several reasons.

Debtor purchased the annuity on May 10, 2013, several months after the death of her husband.  It entitles her to receive the sum of $436 a month for life, with a guarantee of 20 years of payments.  She began receiving the payments 30 days after issuance of the annuity.  Debtor had the opportunity to choose a plan that provided payments for her life only, but chose another option.

Debtor's husband was the owner of a tavern called The Budweiser Inn which he operated with assistance from Debtor.  The company which owned the tavern's assets incurred debt to build a new building, on which debt Debtor and her husband were obligated.  In 2010, the property was placed on the market, but no offers were received.

At the end of 2012, Debtor's husband died unexpectedly.  Her stepson took over the operation of the business.  At the time of his death, Debtor and her husband were considering selling their residence in order to downsize.  Shortly after his death, the residence sold and the Debtor cleared the sum of $152,000.  She transferred $52,000 of the proceeds to her stepson and his wife and two children in four equal shares.  The remaining $100,000 funded the purchase of the annuity.

In March 2013, immediately before the purchase of the annuity, Debtor and several others including a real estate agent and a legal representative attended a meeting with representatives of Rural Missouri, Inc. ("RMI"), the holder of the second deed of trust on the commercial property.  The payment schedule on the promissory note secured by this deed of trust had previously been modified so that it would require the payment of interest only because the company had been unable to make the amortized payments.  Even so, one of those scheduled

payments was missed.  At the meeting, the Debtor asked RMI to consider a short sale of the commercial property, in other words, a sale for less than the amount due on the second deed of trust.  In the following month, the company made its last payment on the debt, closed its bank account and then the business.

Debtor testified that the business had not been profitable after the new building was constructed.  She also testified she was concerned about how the debt on the building would be paid.  After the meeting, there were a series of exchanges between RMI and the Debtor about the short sale request and the status of the note.  RMI requested a financial statement which Debtor provided in July.  That financial statement shows Debtor to be insolvent at that time from a balance sheet perspective.

Later that year, in September, Jefferson Bank, the holder of the first deed of trust, foreclosed on the property.  It was purchased by a third party for approximately the amount owed on the claim secured by the first deed of trust.  RMI made no bid at the sale and received no proceeds from the transaction.  After some continuing discussions and exchange of information, RMI determined that no satisfactory arrangements were in the offing with regard to the payment of the debt and filed suit against the Debtor.

The Debtor claims the annuity was purchased to compensate for income lost due to the death of her husband.  In addition to the annuity payment, Debtor's income now consists of social security disability payments in the amount of $1,038 per month and a small portion of her husband's pension, amounting to $834 a month.  Debtor cannot work due to her disability and other health conditions.  The schedules show her monthly income to be $2,308 and her recurring monthly expenses to be $2,309.  The Trustee concedes that the annuity payment is necessary for

the support of the Debtor but denies the applicability of the other prerequisites for a claim of exemption for the annuity under the cited statute.

## II.     Discussion

Pursuant to Rule 4003(c) of the Federal Rules of Bankruptcy Procedure, the Trustee, as the objecting party, bears the burden of proof to demonstrate that the exemption should not be allowed. *In re Kuhrts,* 405 B.R. 333, 334 (Bankr. W.D. Mo. 2009). While it is true that exemption statutes are to be liberally construed, the courts have also held that they may not, in the process of such construction, extend the statutory grant beyond the intention of the legislature. *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523, 526 (8th Cir. 1998); *Kuhrts*, 405 B.R. at 335; *In re Collett*, 253 B.R. 452, 454 (Bankr. W.D. Mo. 2000).

The statute upon which Debtor relies specifies that the following property is exempt from execution or attachment:

> (e)  any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, non-public retirement plan or any plan described, defined or established pursuant to Section 456.014, the person's right to a participant account in any deferred compensation program offered by the state of Missouri or any other political subdivisions or annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person. . . .

Mo. Rev. Stat. § 513.430.1(10)(e). As the statute itself suggests, three requirements must be satisfied in order to establish a claim of exemption: the payments (1) must be received pursuant to a "pension, annuity, or similar plan or contract,"; (2) must be "on account of illness, disability, death, age or length of service"; and (3) must be reasonably necessary for the debtor's support or for the support of a dependent of the debtor. *Andersen v. Ries (In re Andersen)*, 259 B.R. 687, 691 (8th Cir. B.A.P. 2001); *Kuhrts*, 405 B.R. at 334; *Harder v. Hartford Life Insurance Company (In re Bonuchi)*, 327 B.R. 428, 431 (Bankr. W.D. Mo. 2005).

Satisfaction of the first test requires that the plan be related to employment, that is, that the benefits be a substitute for lost wages. *Andersen*, 259 B.R. at 690-691; *Kuhrts*, 405 B.R. at 335; *In re Stover*, 332 B.R. 400, 403 (Bankr. W.D. Mo. 2005), *Collett*, 253 B.R. at 454. Debtor argues that the annuity was acquired in order to replace wages lost to the household as a result of her husband's death.[1]

For purposes of determining whether the payments are pursuant to a "similar plan or contract" and are truly employment-related rather than merely an investment, the Eighth Circuit Bankruptcy Appellate Panel in *Andersen* set forth several factors for the courts to consider. Those factors are: (1) whether the contributions were made over time; (2) whether there were multiple contributors; (3) the return on the investment; (4) what control the debtor exercises over the assets; and (5) whether the investment was a pre-bankruptcy planning measure. *Andersen*, 259 B.R. at 691-692.

Applying those factors to this case, the Court concludes that the annuity is more in the nature of an investment than an employment-related plan or contract. Most of these factors weigh against the Debtor's claim of exemption. First, contributions to the acquisition of the annuity were not made over time pursuant to a plan. Rather, Debtor's right to payment arose as a result of a single premium paid to the annuity company. *See Eilbert*, 162 F.3d at 527 (annuity not purchased with contributions over time as part of a long-term retirement strategy). Second, there were no other contributors or participants. Third, while the return on investment is modest here, the annuity was structured in such a way as to guarantee that Debtor would receive more

---

[1] An initial question is whether the statute is limited to lost wages of the Debtor rather than another party. Certain language in the Court's opinion in *Stover* suggests the exemption may be as broad as the Debtor argues, embracing payments made pursuant to a plan or contract put in place to replace wages of a person on whom the debtor was dependent. *See Stover*, 332 B.R. at 403 (". . . the purpose of § 513.430.1(10)(e) is to replace lost future earnings of a debtor, *or a person on whom a debtor is dependent*, related to employment . . .") (emphasis added). For the purposes of this case, since the Court denies the claim of exemption for other reasons, the Court assumes that Debtor's claim is not disqualified because she purports to have replaced income from someone other than herself.

than she invested with her single premium payment.  That is because the contract was guaranteed for a period of years rather than merely limited to Debtor's life.  As the evidence indicated, Debtor had the option of choosing a stream of payments for her life alone which would have been more consistent with replacing income on which she was dependent for living purposes. Instead, she chose a stream of payments which would continue for her lifetime, but were guaranteed to last 20 years with the right to receive those additional amounts vested in her beneficiary in the event of her death before that period of time.  Admittedly, the Debtor had little control over the annuity once she exercised initial options, other than to change the beneficiary. This factor weighs slightly in favor of the claim of exemption, but it is not determinative. Finally, given all the facts and circumstances in this case at the time of the purchase of the annuity, this acquisition looks more like an exemption planning or bankruptcy planning strategy than not.  At the time she purchased the annuity, she knew, among other things, that the obligation to RMI was in default and had serious concerns about how it would be paid after the death of her husband.  She also knew that the last payment had been made on the indebtedness and the account from which some of the payments had been made automatically had been closed, as had been the business which generated income from which other payments had been made. She also knew that the commercial property had been on the market for several years without receiving any offers.  Apparently, one offer in the amount of $300,000 had been received at the time Debtor met with representatives of RMI and that offer was clearly insufficient to pay the debt to Jefferson Bank and any significant portion of the debt due to RMI.  According to the uncontradicted testimony, Debtor was involved in a discussion which focused on whether RMI would accept a "short sale", leaving a significant deficiency.

Debtor notes that the property had been initially listed for $750,000.  As the Trustee points out, however, that was years before the time period in question and probably suggests that the property was wildly overvalued.  The evidence also shows that the list price was consistently reduced and that no offers had been made at any listed price.  The Debtor also argues that other assets existed with which to pay indebtedness, particularly equipment and inventory valued  in a probate court filing at approximately $80,000.  As the Trustee points out, however, this valuation never received any kind of judicial endorsement and the actual proceeds from disposition of that property, along with the proceeds of the foreclosure sale, were still insufficient to do anything other than pay Jefferson Bank almost completely.  Finally, there is no indication that Debtor was aware of or embraced this valuation.

Debtor argues that the fact that more than two years elapsed from the acquisition of the annuity to the filing of the bankruptcy case negates any inference that it was a bankruptcy planning device.  The principal case upon which the Debtor relies, however, *Andersen*, involves a considerably longer time period between the purchase of the annuity and the filing of bankruptcy.  Moreover, even though Debtor may not have been specifically planning to file a bankruptcy proceeding, she might still very well have purchased the annuity, at least in substantial part, in an attempt to keep the property from her creditors.  Finally, although the lawsuit was not filed against Debtor until late 2015 on the deficiency on the second deed of trust, during the entire period of time commencing approximately two months prior to the purchase of the annuity until the filing of the lawsuit, Debtor lived under the shadow of a deficiency suit as there were numerous meetings, communications and exchanges of information between the Debtor and RMI.

Even if the annuity could be considered a similar plan or contract satisfying the first prong of the test for applicability of the exemption, the Court thinks it is clear that the payments due under the annuity are not "on account of" any of the events specified in the statute. While it is not entirely clear, the Debtor appears to argue both that the payment is on account of her age and on account of death, particularly the death of her husband. She argues that the purchase of the annuity can qualify if her age or the death of her husband were the reasons for purchasing the annuity, even though they were not events that made her eligible to receive payment. The Court concludes that this is an overly expansive interpretation of the statute.

In *Rousey v. Jacoway*, 544 U.S. 320 (2005), the Supreme Court interpreted a similar federal exemption, § 522(d)(10)(E), which covers rights to payment "on account of illness, disability, death, age or length of service." The Court determined that the "on account of" language has the same meaning as "because of" and that there must therefore be a causal connection between the term that the phrase modifies and the particular factor specified in the statute. As is the case in the Missouri statute, in the federal statute, the phrase modifies the term "payment." Therefore, the payment must be because of the specified factor. *Rousey*, 544 U.S. at 326-27. This Court has held previously that interpretations of federal exemptions are useful guides in interpreting Missouri exemption when the statutory language is sufficiently similar. *Stover*, 332 B.R. at 403; *Collett*, 253 B.R. at 454. That is the case here. Accordingly, age or death must be the triggering event making the Debtor eligible to receive the payment that is claimed as exempt. The Eighth Circuit has embraced this analysis. *See Huebner v. Farmers State Bank (In re Huebner)*, 986 F.2d 1222, 1225 (8th Cir. 1993) ("Huebner's present right to receive annuity payments does not depend upon his having reached age 65, nor upon the

occurrence of any of the other *triggering events* enumerated in § 627.6(8)(e) such as illness, disability, or death.") (emphasis added).

The Trustee relies principally on *Eilbert*, in which the Eighth Circuit denied a claim of exemption in an annuity under a virtually identical Iowa statute for the reason that the payments received by the debtor in that case were not akin to future earnings and did not replace lost income.  The court noted that the annuity was not purchased with contributions made over time as part of a retirement strategy, but purchased with non-exempt inherited assets as a pre-bankruptcy planning measure.  Debtor tries to distinguish *Eilbert* by observing that in this case, the annuity was not purchased with the proceeds of an inheritance.  That is a distinction without a difference, since it was purchased with proceeds which (except to the extent of $15,000) would otherwise have been non-exempt and available for payment to Debtor's creditors.  She also urges that the *Eilbert* court predicated its holding in substantial part on its view that the purchase of the annuity in that case was a planning device to avoid payment of creditors.  As noted above, this Court, while not accusing the Debtor of engaging in a fraudulent transfer, believes that there is sufficient evidence to warrant an inference that the annuity was purchased to insure the money would be available for Debtor's support but not available to her creditors.

The annuity payments in this case do not qualify for exemption under the statute as being on account of age.  Payments do not qualify merely because of the annuitant's age at issuance of the policy.  *Eilbert*, 162 F.3d at 528 ("An elderly annuitant's age at the inception of the contract does not automatically mean that all payments under the annuity are on account of age."); *Andersen*, 259 B.R. at 693 ("The fact that the debtor is near or at retirement age when the annuity is purchased does not create a presumption that the payments are being made on account of the debtor's age.  Rather, the date the benefit payments are to begin should be related to the

debtor's age."). In this case, the Debtor's age had nothing to do with the receipt of payment. In other words, her age was not a triggering event making her eligible to receive payment under the annuity. She chose to begin receiving payments 30 days after the annuity was issued. Since the payments were not tied to her age, they are not eligible for exemption under the statute. *Stanley v. Dhawan (In re Stanley)*, 2006 WL 6811019, *5 (9th Cir. B.A.P. February 2, 2006); *In re Weidman*, 284 B.R. 837 (Bankr. E.D. Mich. 2002), *aff'd*, *Weidman v. Shapiro*, 299 B.R. 429 (E.D. Mich. 2003).

A case with virtually identical facts is *In re Stanley*, in which the court denied a similar claim of exemption in a single premium annuity.[2] In that case, the debtor sold a residence and received just over $100,000 in proceeds. She consulted with a financial advisor who suggested she purchase a single premium annuity. She took approximately $65,000 of the sale proceeds and purchased an annuity with a five-year guaranteed payment, yielding monthly payments of $1,083.75 commencing within 30 days of the purchase date. The debtor claimed the annuity payments as exempt under a California statute virtually identical to § 522(d)(10)(E) of the Bankruptcy Code interpreted by the United States Supreme Court in *Rousey*. The court concluded that the annuity payments were not "on account of age" and that the debtor's age was not a triggering event for receipt of payments, the payments merely beginning 30 days after the purchase. The annuity was merely a vehicle for investment of otherwise nonexempt proceeds from the sale of debtor's residence. *Stanley*, 2006 WL 6811019 at *5.

---

[2] The Debtor has objected to the Court's consideration of *Stanley* on the grounds that it is an unpublished Memorandum that "shall have no precedential value" under the Rules of the 9th Circuit B.A.P. While Rule 8024-1 does indeed state that, it does not prohibit a court from considering such a Memorandum for its persuasive value. Here the Court is not citing *Stanley* as binding precedent, but rather for its analysis under facts strikingly similar to the case at hand. Furthermore, Rule 32.1A of the Rules for the 8th Circuit Court of Appeals does not prohibit the citing of unpublished opinions.

Neither are the annuity payments exempt as being on account of death.  In *Weidman*, the debtor's mother died and the personal representative of her estate, in accordance with instructions in the will, purchased a single premium annuity for the benefit of the debtor with monthly payments of $1,000 for a guaranteed period of 19 years and 3 months, corresponding to the time at which debtor would turn 67 years old.  Debtor claimed the annuity payments exempt under § 522(d)(10)(E) alleging that they were payable "on account of age" and also on account of death, specifically the death of her mother.  The court rejected both contentions.  The court observed that the annuity was nothing more than her share of her mother's inheritance and was not purchased with contributions made over time as part of a long-term investment strategy.  For that reason, the annuity did not satisfy the first test in that it was not a similar plan or contract.  *Weidman*, 284 B.R. at 840.

The court also rejected the debtor's contention that the annuity was exempt because the payments were on account of death, observing

> Weidman's right to receive payments under the annuity contract is not conditioned on any of the factors listed in § 522(d)(10)(E).  There is simply no support for Weidman's contention that because the purchase of the annuity was triggered by the death of her mother, it qualifies under § 522(d)(10)(E).

*Weidman*, 284 B.R. at 841.

While her husband's death may have been part of the background, specifically the reason for the purchase of the annuity, it was not a triggering event conditioning her right to payments under the annuity.  It therefore does not qualify for exemption under the statute.

Debtor cites the *Collett* case as being one that supports her claim of exemption.  On the contrary, the court in *Collett* denied the claim of exemption in part because there was not a sufficient relationship between the death of the debtor's aunt and his right to receive payments under the annuity.  In that case, the debtor's aunt had established a trust for the benefit of the

debtor and upon her death, her will provided for a gift to the debtor which the trustee in his discretion could fund by purchasing an annuity.  The court held that the annuity was nothing more than an inheritance received in the form of an annuity and not exempt.  *Collett*, 253 B.R. at 454.  In so doing, the court rejected the type of argument made by the Debtor here observing:

> The express language of the statute exempts annuities as "on the account of death," but Robert's annuity was not on account of death; rather, it was the result of, or "on account of," the trustee's choice of form in which to give Robert his inheritance. . . . The fact that the gift was indirectly triggered by his aunt's death and took the form of an annuity, does not make it exempt.

*Collett*, 253 B.R. at 454-455.

The Debtor also relies on *In re Vickers*, 408 B.R. 131 (Bankr. E.D. Tenn. 2009).  The case is clearly distinguishable, however, because that holding is based in substantial part upon the fact that the debtor swapped an individual retirement account, a clearly exempt retirement plan asset, for the annuity.  She also relies substantially on *Andersen*, which is also distinguishable.  First of all, in that case the trustee conceded the annuity was purchased as a retirement plan.  In addition, the court concluded that there was no issue about the purchase of the annuity having been part of a pre-bankruptcy planning effort since it was purchased more than 13 years prior to the bankruptcy filing.  Here the temporal connection between the purchase of the annuity and the filing of the bankruptcy is not nearly so attenuated.

For all of these reasons, the Court sustains the Trustee's objection to the Debtor's claim of exemption.

Dated:  September 27, 2016    /s/Dennis R. Dow_____
THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

Cc:   John Reed
Cecilia Young
George Smith